ANNIE ALSTON, APPELLEE, V. PHILIP ALSTON ET AL., AP-
PELLANTS.

FILED JULY 15, 1921.  No. 21654.

1. **Vendor and Purchaser:** CONTRACT. Contracts upon which this
   action is predicated *held* to be executory contracts for the sale of
   real estate, and not leases.

2. **Homestead.** Where the purchaser of real estate under an executory contract of sale partially performed occupies such real
   estate with his wife and family as his home, his wife may become
   vested with a homestead interest in the same.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Affirmed as modified.*

*E. R. Leigh,* for appellants.

*Benjamin S. Baker* and *William M. Burton, contra.*

Heard before LETTON, DAY and DEAN, JJ., SHEPHERD
and STEWART, District Judges.

SHEPHERD, District Judge.

The plaintiff sued the defendants in equity to cancel an
assignment of contracts relating to real estate in South
Omaha, said contracts having been made by the Midway
Investment Company to Philip Alston, and said assign-
ment being by him alone to the defendants Lustgarten and
Cohn.  The plaintiff, who is the wife of Philip Alston,
contends that said contracts conveyed to him an interest
which could be made the subject of homestead, and that
she lived on the property with her husband and children
and made it her homestead, and that the assignment by
her husband without her signature or consent was of no
force and effect.

Defendants assert that neither the plaintiff nor her
husband acquired any right under said contracts to which
a claim of homestead could attach; that said contracts
were nothing more than contracts of letting for rent, and
that, construed most favorably for the Alstons, they gave

only an option to purchase, which was never exercised; and that, in the second place, neither of the Alstons ever made, or claimed to make, the property their homestead. They say that defendant Philip Alston received a valuable consideration for his assignment to Lustgarten and Cohn, and that since said assignment said Lustgarten and Cohn have paid a total of $140 on the said contracts, and have been, by their tenants, in continuous possession of the property. And they further say that when the assignment was made plaintiff and her husband were not occupying the premises, but had abandoned the same as their home. The court found for the plaintiff, canceled the assignment, and decreed ouster of the defendants.

Examination of the record discloses that the contract (there were two contracts identical as to wording, one for one lot and one for another) is very much like those commonly used in selling out additions upon monthly payments. Though the language of the instrument is "has agreed to let" and "has agreed to take," and though the monthly payments are described as "rent," the full amount promised to be paid is the full sale price of the lot. The following excerpt gives some aid to understanding it:

"All rent paid hereunder for the use of said property, together with interest at the rate of six per centum per annum, shall be deducted from the agreed purchase price, but should the said Phil Alston fail to make the payment of rents as agreed (time being the essence of this agreement) he shall forfeit his right to purchase said property, together with all payments as rent hereunder, which amounts shall be understood to be fully earned, and said tenant may be at once dispossessed and shall quit and surrender the premises in as good state and condition as they were at the commencement of the term, reasonable use and wear thereof and damages by the elements excepted."

Philip Alston had made some payments upon the contract. It is in evidence that he had applied to the com-

pany for a computation of the balance to be paid to secure a deed. Mr. Merrow, the president of the company, testified that he stated that the company would not be inclined to deed to the assignees without assignment from the plaintiff as well as from her husband, thereby indicating to some degree that the company construed the contract as conveying a right to which the wife's claim of homestead might attach. However, he elsewhere states that the company desired to avoid entanglements and to be on the safe side.

In the case of *Jackson v. Phillips*, 57 Neb. 189, this court said: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance, of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." The court continues: "The instrument in suit has some direct earmarks of a lease. It contains some terms and expressions which would, taken literally, stamp it as a lease; but, when its substance is examined critically, the apparent character of the instrument is destroyed. The arrangement of the consideration in reference to the payment by instalments being $60 for each of the four years succeeding the time of the execution of the contract, and $660 at the expiration of the fifth year, the $60 payments being each the one year's interest at 10 per cent. per annum of the $600, which it seems more than probable was a principal sum of the consideration for the contract between the parties, furnishes a strong indication of a sale. There is a further strong indication of a sale in the feature of the agreement in relation to a conveyance of the property to the contractee by the contractor on full payment of all sums stated in the contract, as evidenced by the notes. All things considered, we are forced to conclude that the instrument declared upon in

the petition was an executory contract for the sale of the land."

It seems plain in this case that the instruments in question were, according to the intention of the parties and within the rules of law, instruments of like character. And we so hold, approving the decision of the trial court in that regard.

It remains to consider if the plaintiff ever made the premises her homestead, and whether she continued to claim the same as such at the time of the assignment. It is clear from the record that she lived there with her husband and children for a considerable time after the purchase of the place under these contracts. Then she made a hurried departure to Texas to visit her sick sister there, taking the children with her. Her husband followed later, as he puts it, to get the children. There was evidently some trouble between the husband and wife. While in Texas the matter of staying there on a farm was considered, but the plaintiff decided against this and returned to Omaha, finding the furniture removed from the house and the defendants in possession, and later learning of the assignment by her husband to Ben Lustgarten and Louis Cohn. She says that immediately upon her return she went to the premises intending to continue her occupation of the same.

The plaintiff's story is corroborated by a number of witnesses and by some documentary evidence. It is strongly denied by Philip Alston, by his sisters, and some other witnesses, and in a measure by some circumstances. But there is not enough evidence on the part of the defendants to justify us in reversing the finding in this particular of the experienced judge who saw the witnesses and heard their testimony as it came from their lips. The finding of the trial court was that the plaintiff had a homestead in the premises. From a careful examination of the record it does not appear that he erred in his conclusion.

The contracts in question being executory contracts of

sale partially performed, and the plaintiff rightfully claiming a homestead in the premises involved, it follows that the assignment to the defendants, without her knowledge and consent, was void and of no effect.

The defendants ask that they be reimbursed, in any event and as a matter of equity, for the $140 in payments made by them upon the contracts, saying that plaintiff must have made them if defendants had not. Under the circumstances, the court is of opinion that the plaintiff should bear this burden. Asking equity, she should be willing to do equity. Within 60 days of the final, determination of the case upon mandate in the district court, she is required to pay defendants said sum of $140 with interest at 7 per cent. per annum from the date of her original decree, and the same is hereby made a lien upon her interest in the property in defendants' favor. As so modified, the judgment and decree of the district court is affirmed.

AFFIRMED AS MODIFIED.